UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————

CENTURY SURETY COMPANY,

                              Plaintiff,

           vs.

MISSION DESIGN & MANAGEMENT, INC.,        Case No.: 1:16-cv-02075
THE WALSH COMPANY, LLC, BAKERS
DOZEN PARTNERS LLC,
EMM GROUP HOLDINGS LLC, BOWERY
AT SPRING PARTNERS, LP, JUAN MAURISACA and
JAIME GUICHAY GUERRERO,

                              Defendants.

———————————————————————

## LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF CENTURY SURETY COMPANY'S MOTION FOR SUMMARY JUDGMENT

      Pursuant to Rule 56.1 of the Rules of the United States District Courts for the Eastern District of New York, CENTURY SURETY COMPANY ("Century"), by its attorneys, Hurwitz & Fine, P.C., provide the following Statement of Material facts to which Century contends there is no genuine issue to be tried.

      Exhibits referenced herein are attached to the Declaration of Dan D. Kohane dated April 20, 2018 ("Kohane Decl.") and the Affidavit of Keri Yaeger, Esq., sworn to April 20, 2018 ("Yaeger Aff.").

### Procedural History

      1.    Century commenced this declaratory judgment action by filing a Summons & Complaint in the United States District Court for the Eastern District of New York on April 27, 2017 against Defendants, MISSION DESIGN & MANAGEMENT, INC. ("Mission Design"), THE WALSH COMPANY, LLC ("Walsh"), BAKERS DOZEN PARTNERS LLC ("Bakers

Dozen"), EMM GROUP HOLDINGS LLC ("EMM"), BOWERY AT SPRING PARTNERS, LP ("Bowery"), JUAN MAURISACA ("Maurisaca") and Jaime Guichay Guerrero, seeking a declaration that Century has no obligation to defend or indemnify its named insured, Mission Design, or the claimed additional insureds, Walsh, Bakers Dozen, EMM and Bowery, in a lawsuit commenced by Maurisaca entitled: *Juan Maurisaca v. Bowery at Spring Partners, LP, Condominium Board of the Nolita Place Condominium, Midboro Management, Inc., Bakers Dozen Associates LLC, EEM Group Holdings LLC, and the Walsh Company, LLC*, Supreme Court, Queens County, Index No. 702405/2012 (the "Underlying Action"). Docket # 1; Declaration of Dan D. Kohane, sworn to April 20, 2018, Exhibit A.

2. On or about June 27, 2016, Bowery filed and served its Answer to Century's Complaint. See Docket # 18.

3. On or about June 29, 2016, Walsh filed its Answer to Century's Complaint. See Docket # 20.

4. On or about July 6, 2016, EMM and Bakers Dozen and served their Answers to Century's Complaint. See, Docket # 22 and 23.

### The Underlying Incident

5. On or about September 20, 2012, Maurisaca was working in the course of his employment for Mission Design on a project located at 199 Bowery Street in New York, New York (the "Project"). Kohane Dec., Exhibit A, ¶ 78; Exhibit B, pp. 34, 42; Exhibit C and Exhibit D.

6. The Project involved the construction of a restaurant and nightclub. Kohane Dec., Exhibit F, pp. 10-11.

7. The space in which the restaurant and nightclub were being constructed was located in a condominium building. Kohane Dec., Exhibit F, pp. 10-11, 13.

8. The section of the building in which the restaurant was located was owned by Bowery. Bowery leased the space to Bakers Dozen. Kohane Dec., Exhibit F, p. 14, 39-40.

9. Prior to the accident, Bakers Dozen retained Walsh to perform construction management services at the project, and Mission Design to perform the renovation. Kohane Dec., Exhibit F, p. 17; Exhibit N.

10. At the time of the incident, Maurisaca was working on a scaffold performing sheetrock work on the walls. Kohane Dec., Exhibit B, pp. 62. 63.

11. The scaffold was on wheels and would be moved along the length of the wall. Kohane Dec., Exhibit B, pp. 63-64.

12. Maurisaca submits that the scaffold had four wheels and each had a locking mechanism. Kohane Dec., Exhibit B, pp. 62, 64, 90.

13. After the sheetrock was installed at a particular location, Maurisaca and his partner would climb down and wheel the scaffold to the next location. Kohane Dec., Exhibit B, pp. 61-64.

14. Maurisaca and his partner were on the scaffold for about two or three minutes putting sheetrock on the wall when, as Maurisaca was holding a piece of sheetrock so that his partner could screw it in (Kohane Dec., Exhibit B, pp. 67, 72), the scaffold moved (Kohane Dec., Exhibit B, p. 73).

15. Maurisaca hit the wall and then fell of the scaffold hitting the ground. Kohane Dec., Exhibit B, pp. 73-74.

**Underlying Action**

i. **Main Action**

16. Maurisaca commenced a lawsuit in Supreme Court, County of Queens, under index number 702405/2012, captioned *Juan Maurisaca v. Bowery at Spring Partners, LP, Condominium Board of the Nolita Place Condominium, Midboro Management, Inc., Bakers Dozen Associates LLC, EEM Group Holdings LLC, and the Walsh Company, LLC*. ("Underlying Action").  Kohane Dec., Exhibit A.

17. Paragraph 78 to the Amended Complaint alleges that "on September 20, 2012, the Plaintiff JUAN MAURISACA was an employee of MISSION DESIGN & MANAGEMENT INC." Kohane Dec., Exhibit A, ¶ 78.

18. Maurisaca asserts violations of New York Labor Law §§ 240(1), 241(6), 200 and common law negligence.  Kohane Dec., Exhibit A, ¶¶ 88-97.

ii. **Third-Party Action and Second Third-Party Action**

19. After Walsh answered the complaint, it commenced a Third-Party Action against Mission Design and a Second Third-Party Action against Scottsdale Insurance Company ("Scottsdale"), Mission Design's primary insurer.  Kohane Dec., Exhibits G and H.

20. The Second Third-Party Complaint alleges that Walsh qualifies as an additional insured under the Scottsdale policy.  Kohane Dec., Exhibit H.

21. Walsh eventually moved for summary judgment on this claim, and Scottsdale cross-moved.  Kohane Dec., Exhibit I.

22. By Short Form Order, dated October 1, 2015, the trial court denied Walsh's motion for summary judgment and granted Scottsdale's cross-motion declaring that Walsh does not qualify as an additional insured under the Scottsdale policy.  Kohane Dec., Exhibit I.  Citing

Linarello v. City Univ. of N.Y., 6 AD3d 192, 195 (2004), the court reasoned that based upon the language of the Scottsdale policy, to qualify as an additional insured, Walsh must have entered into a contract or written agreement with Bakers Dozen or Mission Design which required those parties to name Walsh as an additional insured. Kohane Dec., Exhibit I. The court found no evidence of such an agreement, and in turn Walsh's lack of privity was fatal to its claim for coverage.

### iii.   Third Third-Party Action

23.   Thereafter, Bakers Dozen and EMM commenced a Third Third-Party Complaint against Mission Design and Scottsdale. Kohane Dec., Exhibit J.

24.   As relevant here, Bakers Dozen also sought additional insured status under the Scottsdale policy. Kohane Dec., Exhibit J.

25.   By Decision and Order dated May 21, 2015, Bakers Dozen's motion for summary judgment against Scottsdale was granted. Kohane Dec., Exhibit L. The court determined that Bakers Dozen qualified as an additional insured under the Scottsdale policy. Kohane Dec., Exhibit L.

26.   All claims against EMM in the Underlying Action have been dismissed.

### Century Policy

27.   CENTURY issued a Commercial Excess Liability Policy to Mission Design, policy number CCP 782619, effective August 17, 2012 through August 6, 2013, which was in full force and effect on September 20, 2012 ("the Century Policy"). Yaeger Aff., Exhibit A.

28.   The Century Policy is excess over "the controlling underlying insurance," which is identified as a commercial general liability policy issued by Scottsdale Insurance Company. Yaeger Aff., Exhibit A; Kohane Dec., Exhibit O.

29. Form CX 00 01 09 08 sets forth the policy's grant of coverage, in relevant part:

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under the "controlling underlying insurance".

Other words and phrases that appear in quotation marks in this Coverage Part have special meaning. Refer to Section IV - Definitions. Other words and phrases that are not defined under this Coverage Part but defined in the "controlling underlying insurance" will have the meaning described in the policy of "controlling underlying insurance".

The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance".

There may be more than one "controlling underlying insurance" listed in the Declarations and provisions in those policies conflict, and which are not superseded by the provisions of this Coverage Part. In such a case, the provisions, exclusions and limitations of the "controlling underlying insurance" applicable to the particular "event" for which a claim is made or suit is brought will apply.

SECTION I - COVERAGES
1. Insuring Agreement
   a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies.

      We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of

"controlling underlying insurance" have been exhausted in accordance with the provision of such "controlling underlying insurance".

When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other suit seeking damages for "injury or damage".

***

Yaeger Aff., Exhibit A.

30. Endorsement CXL 1185 0611, ACTION OVER EXCLUSION, further removes coverage as follows:

SCHEDULE

State(s): New York

The following exclusion is added to Section I - Coverages, paragraph **2.** Exclusions:
For the states named in the Schedule above, insurance provided under this Coverage Part does not apply to:
**Employer's Liability:**
"Injury or damage" to:
**(1)** An "employee" of the named insured arising out of and in the course of:
  **(a)** Employment by the Named Insured; or
  **(b)** Performing duties related to the conduct of the named insured's business; or
**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.
This exclusion applies:
**(1)** Whether the named insured may be liable as an employer or in any other capacity; and
**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

* * *

Yaeger Aff., Exhibit A.

**Scottsdale Declaratory Judgment Action**

31. In addition to being named as a Third-Party Defendant in the Underlying Action, Scottsdale also commenced a declaratory judgment action against Mission Design in Supreme Court, New York County, under index number 151402/2015, seeking a declaration that it is under no obligation to defend or indemnify the company based upon a violation of a Condition precedent to coverage contained in its policy ("Scottsdale Declaratory Judgment Action"). Kohane Dec., Exhibit K.

32. The action also named Bowery, Bakers Dozen and Walsh to ensure that any decision was binding on them. Kohane Dec., Exhibit K.

33. In its Complaint, Scottsdale submitted that following the accident and commencement of the Underlying Actions, Mission Design entered into an agreement whereby it agreed to indemnify Mission Design with respect to work performed at the project. Kohane Dec., Exhibit K.

34. This act, Scottsdale submitted, was a violation of the Condition stating that "[n]o insured will, except at that insured's own cost,…assume any obligation, or incur any expense,…without our consent." Kohane Dec., Exhibit K.

35. The company further submitted that based upon the execution date, the agreement also did not qualify as an "insured contract" under the terms of the Scottsdale policy. Kohane Dec., Exhibit K.

36. Mission Design failed to appear in the Scottsdale Declaratory Judgment Action. Kohane Dec., Exhibit L.

37. By Decision and Order dated May 21, 2015, Scottsdale's motion for default judgment against Mission Design was granted, and it was ordered that Scottsdale has no

obligation to defend or indemnify Mission Design relative to the Underlying Action. Kohane Dec., Exhibit L.

38. As part of the Scottsdale Declaratory Judgment Action, Bowery also asserted a counterclaim against Scottsdale seeking additional insured status under the Scottsdale policy. Kohane Dec., Exhibit M.

39. Scottsdale filed a motion for summary judgment on Bowery's counterclaim asserting, as it argued with respect to Walsh, that it lacked privity of contract between Bowery and Mission Design, a requirement to trigger additional insured status. Kohane Dec., Exhibit M.

40. The motion was unopposed. Kohane Dec., Exhibit M.

41. By Decision and Order dated February 23, 2016, the motion was granted and it was determined that "Bowery is not a covered entity under the insurance policy issued by" Scottsdale. No appeal was filed. Kohane Dec., Exhibit M.

## Notice to Century

42. Century received its first notice of the incident involving Juan Maurisaca and the resulting lawsuit from Walsh's insurer, CNA/National Fire Insurance Company of Pittsburgh. Yaeger Aff., Exhibit B, p. 1.

43. In response, by letter dated September 5, 2013, copied to all potential claimants, Century advised Mission Design that it was investigating this matter subject to a partial disclaimer of coverage. Yaeger Aff., Exhibit B.

44. As relevant here, the letter further advised that the Century Policy is excess coverage to the underlying general liability policy issued by Scottsdale Insurance Company to Mission Design. The letter noted that Century is only obligated to pay up to its limits if the

settlement exceeds the policy limits of the underlying carrier, and that coverage is subject to the policy provisions, limitations and exclusions contained in that policy.  Yaeger Aff., Exhibit B.

45. The letter further advised that the Century Policy contains separate additional exclusions and conditions including the Action Over Exclusion.  Yaeger Aff., Exhibit B.

46. The letter was clear that if it was determined that Maurisaca was injured while employed by Mission Design, "there will be no coverage for his injuries under this policy." Yaeger Aff., Exhibit B.

47. Thereafter, by letter dated March 3, 2015, Century supplemented its coverage letter noting that it was now in receipt of a Third-Party Action commenced against Mission Design by Bakers Dozen.  Yaeger Aff., Exhibit C.

48. The letter reiterated that the Century Policy is excess and only triggers upon the exhaustion of the underlying policy issued by Scottsdale.  Yaeger Aff., Exhibit C.

49. It also again advised that if it was determined that Maurisaca was injured while employed by Mission Design, no coverage would be afforded.  Yaeger Aff., Exhibit C.

50. By letter dated September 17, 2015, Century sent another letter to Mission Design and its counsel acknowledging receipt of the Third-Party Action commenced by Walsh against Mission, and the declaratory judgment action commenced by Scottsdale.  Yaeger Aff., Exhibit D.

51. The letter again made it clear that the Century Policy is excess to the Scottsdale policy and that "if there is no coverage for Mission under SIC's policy, there will be no coverage under Century's policy, as coverage under the Century policy is subject to the policy provisions, limitations and exclusions contained in the underlying General Liability policy issued by SIC." Yaeger Aff., Exhibit D.

52. It advised Mission Design that Century had learned that Scottsdale sought and was granted a declaratory judgment that it did not owe a defense or indemnification to Mission Design. Yaeger Aff., Exhibit D.

53. While Century at that time did not have a copy of the motion papers, it noted that Scottsdale's pleading in its declaratory judgment action indicated that a disclaimer of coverage and/or reservation of a rights were issued based on certain grounds, and that "[a]s the Century's policy follows the same provisions, exclusions and limitations contained in the SIC policy, to the extent that any or all of the above provisions preclude coverage under the SIC policy, Century likewise disclaims coverage for the same reasons." Yaeger Aff., Exhibit D.

54. The letter then advised that notwithstanding Scottsdale's position, there was no coverage for Mission Design under the Century Policy based on the cited exclusions, which included the Action Over Exclusion. Yaeger Aff., Exhibit D.

For the reasons set forth at length above, Century is entitled to an Order awarding it (a) summary judgment on its Complaint against Mission Design, Walsh, Bakers Dozen, EEM, Bowery and Maurisaca and a declaration that Century has no obligation to defend or indemnify Mission Design, Walsh, Bakers Dozen, EEM or Bowery relative to the Underlying Action; and (b) a declaration that Century has no obligation to pay any damages or expenses to Maurisaca; together with such other and further relief as this Court deems just and proper.

DATED:   April 20, 2018
         Buffalo, New York

                                          */s/ Dan D. Kohane*_____
                                          Dan D. Kohane, Esq.
                                          Hurwitz & Fine, P.C.
                                          *Attorneys for Century Surety*
                                          1300 Liberty Building
                                          Buffalo, New York 14202
                                          (716) 849-8900